The next case this morning is 521-0148 People v. Garrett. Arguing for the defendant appellant is Richard Whitney. Arguing for the state appellee is Lynn Harrington. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, counsel. Morning. Good morning. Uh, Mr. Whitney, you ready to proceed? I am, your honor. Go right ahead. Good morning, your honors. May it please the court, counsel. Richard Whitney for defendant appellant Lamarck Garrett. Your honors, it is fundamental that the due process clause of the 14th amendment bars prosecuting a defendant who is unfit to stand trial. Thus our legislature and our courts have implemented appropriate safeguards to prevent that from happening. One such safeguard is that once the court agrees that fitness is at issue, or if it finds a defendant is unfit, it may not make a finding that the defendant is fit or has been restored to fitness without making its own assessment and finding of fitness and making a record of the basis for its findings. In other words, it cannot simply rubber stamp the findings of a psychiatrist or mental health expert and adopt that as its own. A second and third safeguard is that both the court and defense counsel have an affirmative duty to raise and act on the fitness. All three of these safeguards were violated in this case, and that is what brings us here today. In addition, we present a fourth corollary argument that at the very least, Mr. Garrett presented enough of a post-trial claim of ineffective assistance of counsel to warrant the appointment of new counsel and additional post-trial proceedings on that claim. But I submit that this court does not need to reach that issue because the first issue is plainly dispositive here. The court below made an initial determination that Mr. Garrett was unfit to stand trial based on Dr. Cuneo's report, primarily. It ordered remedial treatment, and eight and a half months later, after another expert submitted an inconsistent, equivocal, and at times incoherent report finding that Mr. Garrett had attained fitness, a different judge with no prior opportunity to observe Mr. Garrett and with no inquiry of Mr. Garrett other than confirming his identity, summarily accepted the party's stipulation to their expert's presumed testimony, and simply stated, quote, the court would find that based upon the reports and the stipulations that the defendant is fit to stand trial, remain, or will remain fit to stand trial until further report or order of the court. That's an exact quote, and there was no further explanation, analysis, or comment. Now, I realize the state has disputed our claim that the court apparently did not even read the report before rendering its decision, but it's important to emphasize that our argument does not depend or rest upon any proof of that particular fact. The very fact that the record is ambiguous as to that point itself supports our argument for reversal under the Cook opinion, but more centrally, the complete absence of any indication in the record that the court independently assessed the report or otherwise made its own assessment of Mr. Garrett's fitness plainly requires reversal under numerous opinions that we cited from the first, second, and fourth districts of this court, including the Contorno case, the Cook case, et cetera. This is textbook. It's basically black-letter law at this point that you cannot simply say, well, we accept the stipulation. The expert would testify to this, and based on this, I find you fit. This is what the numerous courts cited in our briefs have said you cannot do. It is crystal clear in this case, and that is why I submit that I don't think we need to get past the first issue. Nonetheless, out of an abundance of caution, I would like to at least briefly address some of the other issues that we raise in this case. Your Honors, I note that the timer does not seem to be advancing, at least on the screen that I'm seeing. Just wanted to make that, and I'm not asking for extra time based on that error, but I did want to call that to the court's attention. Well, I think we have issues with our video. Okay. My screen is. It is advancing. Okay. All right. Very good. I just wanted to make the court aware of that. I can hear you fine. Can everyone hear you? I'm sorry? Justice Moore, can you hear and see? I'm asking the other judges if they can hear you. Yes, I can hear you just fine. Yeah, I'm having no issue. Okay. Very good. Thank you. With respect to the second and third issues, and that of course relates to what happened after the trial began, and on the second day, Mr. Garrett began to act out and frequently interrupted the trial, saying basically paranoid things, that they're out to get them, they were trying to kill them, and on and on. The whole thing was based on race, et cetera. The points that I would just want to emphasize on that is basically following the Moore case, the fact is that just the fact that the court was notified that he had been deprived of his medication, the medication that Dr. Cuneo had stated was needed to stabilize him, and the court was informed of this, and then you had the fact that he was acting out during the trial, and the fact that the attorneys informed the court, he's not communicating with us, that should have been enough red flags, especially given this defendant's history, to say, wait a second, out of abundance of caution, we need to make a real determination of fitness. Those concerns were not allayed by the fact that months later, during the Krankel hearing, counsel said, well, we actually had Dr. Cuneo talk to him, and he raised similar concerns, and he believed that he was fit. A hearsay statement months later that a doctor believed he was fit is not something that we can rest on. We cannot go forward with any confidence that, in fact, he was fit, especially given this defendant's history, Mr. Garrett's history. So those are the things that I want to emphasize with respect to that. It is true that Dr. Valla Benigni did express doubts about whether psychotropic medications were necessary in this case, but he ultimately determined that he wasn't going to take them off them. He went along with what Dr. Cuneo had previously established, that these were necessary for him to be stabilized, and so you not only had the one red flag that he was off his medications, but you had the other additional red flags of the paranoid, delusional behavior, and you also had the fact that he didn't do this during his first trial, when he was presumably on his medications. So if this was a case of someone malingering or deciding to disrupt the trial consciously, even though he really was which I have to admit is a possibility, why didn't he do it in the first trial? So the point here with respect to these additional concerns about what occurred during the trial is that we cannot assume that he's malingering. That's exactly why you need a new fitness hearing to make a real determination of, is this because he was off his meds? Is this because his mental illness manifested itself a second time because of this, or is it because he was malingering? It's exactly why we need to have a new fitness hearing to tease this out and make a real scientific-based determination. And finally, again, just very briefly with respect to the fourth issue that we raised, there was enough of a, you know, the standard there with respect to the fourth issue after a crankle hearing is whether or not there were, whether there was possible neglect of the case by counsel. And clearly he met that low threshold here where he this was what was causing me to be incoherent. He basically affirmed and told the court that this, when he was off his medications, that this did contribute to him being unable to assist in his own defense. He may not have expressed it in the most artful way, but that was clearly the substance of his comments. And accordingly, that should have been another red flag to at least out of an abundance of caution, appoint new counsel and conduct additional post-trial proceedings. So with that, unless there's any questions from the court, we respectfully ask that Mr. Garrett's convictions be vacated and this clause remanded for further proceedings, including a new determination of fitness. Thank you, runners. Thank you, counsel. Before we move on, Justice McHaney or Justice Moore, do you have any questions? No questions. Well, this new hearing you're asking for exactly what kind of a hearing do you suggest that should be? I submit that the weight of authority supports the proper courts that it should be a new fitness hearing as opposed to a retrospective hearing. There is some authority. Why would that be? Primarily because. The authority to have a retrospective fitness hearing? I think that would be very problematic at this point, given the amount of time that has transpired. I mean, that finding of fitness was back in 2016 at this point, after the even earlier finding of fitness. So to tease out whether you can even conduct a retrospective hearing at this point becomes extremely problematic. And since the goal is to adhere to due process and only try someone if he's fit, I think a fresh fitness hearing would be in order. However, if the court is inclined to follow the minority authority that would support a retrospective fitness hearing, that would be difficult to conduct. But if it's going to be based on Dr. Vallobanini's report, I think that there's enough warning signs here that that was not sufficient to assure the court that there was fitness, meaning it would probably want to order a new report, a new mental health in any event. Anything else? No. Obviously, Mr. Whitney, you'll have your time for rebuttal. Ms. Harrington, go right ahead. Good morning, Your Honors. Counsel, my name is Lynn Harrington, and I represent the people of Illinois. Your Honors, I'd first like to address the topic that in his brief, defendant concedes the fact that the first two issues here have to be reviewed as plain error because they were forfeited below. He does not talk about it today, and that might be because there's a huge problem with his argument. Specifically, Your Honors, that in his reply, defendant conceded that there was no clear or obvious error here on either point. It is well settled that in order to find plain error, you have to first find a clear or obvious error occurred, and that the evidence was so closely balanced that the error alone threatened to tip the scales of justice, or a clear or obvious error occurred, and the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. Unfortunately for defendants, Your Honor, on page five of his reply brief, defendant says it is ambiguous at best whether the court read the report. Your Honors, the Merriam-Webster dictionary definition of ambiguous is capable of being understood in two or more possible ways. What does that mean then? That means that they haven't proven that the error was clear or obvious. Again, on page nine of the reply brief, defendant says while the record is not entirely clear as to whether the court may have read the reports before acting, right there, right there, Your Honors, he's saying it's not a clear or obvious error. Defendant, of course, relies on the people. Are you suggesting that's a concession? Yes, I am, Your Honor. I believe it is a concession that under the plain error doctrine, you don't get to look at whether the evidence was closely balanced or if it affected the fairness of the judicial system unless you can find a clear or obvious error. And in Cook, when the Second District Court was talking about, well, it's ambiguous here whether the trial court read the record or not, the Second District was talking about the actual merits of the case under those facts, which are totally different than here. But as we all know, when you've got forfeiture, you've got plain error. And the defendant has to meet that first leap before we get to the merits of the case. So that was my first point I want to bring out about this first argument, Your Honors. But turning to the merits of the case, the trial court absolutely did not abuse its discretion in finding the defendant was fit to stand trial. He reviewed the psychiatric reports, he accepted the party stipulations to those reports, and he was able to observe defendant in the courtroom. Now, we know from People v. Lewis that our Supreme Court set out what needs to happen in order for a trial court to properly find a defendant fit to stand trial. They have to find the stipulations have to be proper. The court has to say that some in whatever words that it reviewed the psychiatric reports and observing the defendant. Here, the trial court specifically said, based upon the reports and the stipulation that defendant and the stipulations, I find defendant is fit to stand trial. Now, in our briefs, defendant takes issue with the fact that the word read is not in there. But Your Honors, the people argue strenuously that a common sense interpretation of what the trial court was saying is that he had reviewed the reports. He's not saying that based upon these reports that I'm right here on top of my head, and the stipulations, I'm going to find this guy fit to stand trial. Of course, he read the reports. The clerk even asked him when he originally made that misstatement that, oh, I have the latest one. The latest psychiatric evaluation here is from August of 2006. The clerk then said, wait, did you get, I'm sorry, I have to look where, oh, yes, I'm sorry. The clerk says, did you get the last one? And the trial court immediately says, I did. And in my brief, when I pointed out to this court that the impounded supplemental common law record did not have a covered letter for the October report, which makes it seem logical why the trial court was at first confused, defendant replies and says, well, since there's no numbering on them, we don't know what order they were put in. The defendant, with all due respect, is making the state's argument here that the trial court had read all the reports before, came to court, saw the first sheet, said, oh, this is August. The clerk is saying, did you get the last one? He's looking, yes, I did. And obviously he did because the August report was not nearly the same as the October report where Dr. Vallabheny did say that the defendant was now fit to stand trial. Turning to the second issue, Your Honor, I'd also say, as I did before, that counsel in his reply has conceded that there's no plain error here because there's no clear or obvious error with regard to the issue of whether the trial court erred in not stopping mid-trial and holding another fitness hearing. Because on pages 10 and 11, defendant says, is it possible then that defendant was actually mentally fit and was simply just intentionally acting out in order to throw a Of course, in this appeal, the undersigned counsel has never suggested otherwise. So what counsel is saying, Your Honors, is that, yeah, is there evidence of malingering? Sure, I never said there wasn't evidence of malingering. Well, by that fact alone, Your Honors, defendant is conceding that there's no clear or obvious error that would have to be present in order for this issue to be reviewed as plain error. And again, on page 19 of the reply brief, counsel says the court, and now the state, point to some evidence of malingering. And there undeniably is some. There's no more clear concession than there, Your Honors. However, turning to the merits of the issue, the trial court absolutely did not abuse its and here. As the record reflects, immediately when the trial court found out that defendant had not taken his meds that day, it stopped trial and recessed for the day. That means we are literally talking about one afternoon of trial. And all the cases the defendant cites, none of them are that small. We have a lot of other issues too, Your Honor. In Dr. Vallabheny's re-evaluation, she said the defendant was clearly malingering. She said he was taking those fitness tests in bad faith. She doubted the diagnosis of schizophrenia. She wasn't even clear why he was taking psychotropic drugs. She said specifically and most importantly, he was capable of understanding the nature and purpose of the proceedings against him. And what's the standard we look at in the criminal code? A defendant isn't unfit if because of mental or physical condition, he is unable to understand the nature and the purpose of the proceedings against him or to assist in his own defense. So here we have to look at then whether any facts existed that the trial court, I'm sorry, the facts existed trial that would have raised a bona fide doubt as a defendant's ability to understand. We don't have any here, Your Honors. The Illinois Supreme Court has specifically said that the fact that you're unwilling to that's not a bona fide doubt. So for that reason, Your Honors, the trial court absolutely did not abuse its discretion in not holding another fitness hearing under all the factors available to it. Turning to the third issue, there's no ineffective assistance of counsels Nestor and Flynn for them not raising a question with regard to defendant's fitness. Also, we know the seminal case is Strickland. We know that it's an and not an or test. The first prong is that the counsel had to act below objective standards of reasonableness. And of course, the second is that he would have to show that the deficient performance prejudiced him. I think the most important thing under this issue, Your Honor, is the fact that not only did Nestor and Flynn not act unreasonably, they went above and beyond what they needed to do. There was no requirement that they called up the psychiatrist and say, hey, you know what, can you can you go down to the jail? Can you talk to this guy? Because we want to make sure. Obviously, we know why these attorneys were doing that. Because if this then they they would have brought it to the court's attention. But they as they said at the Crankle inquiry, there was no problem. Dr. Cuneo first of all said specifically, he's still fit to stand trial. And defense in his reply brief complains about the vague statement with regard to what what he's doing is kind of what we talked about in the earlier evaluations. Your Honors, even if that statement in and of itself is vague, all we need is Dr. Cuneo's statement that he's still fit to stand trial to show that the first prong hasn't been met. And of course, there's no prejudice whatsoever. Because there's no prejudice that the trial court would run a bona fide doubt as a defendant's fitness. Because the most reasonable I'm sorry, the most recent exam found him fit. And Dr. Bellabene said he was malingering. He's not sure he needed his meds. I see that my time is up. If there are no questions. Go ahead, counsel. I was just gonna say if there's no questions, Your Honor, the people respectfully request that the judgment of the trial court be affirmed. Thank you. Before we move on to rebuttal, Justice Moore, Justice McCain, do you have any questions for Mr. Harris? No. Okay. Thank you, counsel. Mr. Whitney, go right ahead to your rebuttal. Thank you, Your Honors. Your Honors, what the state is attempting to do here is confuse or cloud the issues by conflating them. And with respect to the state's first argument, what we conceded was ambiguous was that the record did not make clear whether the court read the report or not. That's not a concession as to the main issue. As I pointed out in my opening, there's a difference between that sub issue and the main issue. What is not ambiguous is that the court did not make any clear record whatsoever that it independently assessed Mr. Garrett's fitness. And that is what it is clearly required to do under all of the authorities that we cited in our briefs. It cannot simply say, based on the stipulations, we accept that he's now fit. It cannot do that. That's textbook. It is not permitted under Contorno, under Cook, under Gillen, under the other authorities that we cited. And so it is not ambiguous that there is an absence of any indication of this assessment. And that is why it qualifies as plain error under the second prong of plain error, which basically there's numerous authorities that we cited holding that the issue of fitness qualifies under second prong plain error because it's of constitutional dimension. With respect to the second and third issues that we raised, the state is confusing bona fide doubt, which is the standard for ordering a new fitness examination with proof of unfitness. What is ambiguous? When we stated in the brief, when we conceded in the brief, yes, there is some evidence of malingering. There's also some evidence of bona fide mental illness and that he was unstable when he's off his medications. And the other alarm bells that ringing beginning on the second day of trial. There's both. There's evidence either way. But it's the evidence of unfitness that is enough to raise a bona fide doubt. It was not our burden here to prove that he was unfit. That's precisely why you have another fitness hearing. So the state is just confusing the issues here and interpreting our concession on what some of the facts actually are with concession on the main issues. We have not conceded this ground at all. It does qualify under second prong plain error. And as far as Dr. Villa Benani's report, Dr. Villa Benani said a lot of things, you know, in the same report saying, well, he's refusing to doubt about his fitness. With respect to the later revelation at the Krankel hearing, all that Nestor reported to the court was, well, Dr. Cuneo believed he was fit. What does that mean? We don't know how long he talked to him, how long Dr. Cuneo was able to talk to Mr. Garrett, whether it was even in person, whether there was an actual evaluation conducted or just some questions, and whether or not this was a firm conclusion of Dr. Cuneo or literally just a belief. You know, this is all we've gotten. This is why, if the court is not persuaded by our first three issues, at the very least, this case needs to be remanded and counsel appointed so that we can ferret out all of these facts with new post-Krankel proceedings, new post-trial proceedings. With that, I believe I've addressed the state's argument adequately. So, if there are no more questions, I'll end it here and, again, restate our respectful request that the convictions be vacated and this clause remanded for new fitness hearings. Thank you, Your Honors. Thank you, Counsel. Obviously, before we let Counsel go today, Justice McKinney or Justice Moore, do you have any final questions? Nothing further. No other questions. Well, thank you. Obviously, Counsel, we will take the matter under advisement. We will issue an order in due course.